**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELLIOT ZEISEL, on behalf of himself and all others similarly situated,

    Plaintiffs,

  v.

DIAMOND FOODS, INC., a Delaware corporation,

    Defendants.

No. C 10-01192 JSW

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Now before the Court for consideration is the Motion for Class Certification filed by Plaintiff, Elliot Zeisel ("Zeisel"). The Court took the matter under submission, and has considered the parties' papers, relevant legal authority, and the record in this case. The Court HEREBY GRANTS Zeisel's motion.

## BACKGROUND

This case involves allegedly misleading and misbranded labels on Diamond's shelled walnut products ("Shelled Walnut Products"). In order to place the dispute in context, the Court provides a brief history of the disputed labels. In or around early 2002, Diamond included the following statement on certain packages of its Shelled Walnut Products: "The omega-3 in walnuts can help you get the proper balance of fatty acids your body needs for promoting and maintaining heart health." (Declaration of Steven Zaffarano in Opposition to Plaintiffs' Motion for Class Certification

("Zaffrano Decl."), ¶ 2.) Diamond refers to this as the "Structure/Function Claim". Diamond also placed a heart symbol adjacent to the phrase "Omega-3" ("Banner"), and it began to use the Structure Function Claim and Banner on some, but not all, of its Shelled Walnut Products in mid to late 2002. (*Id.*)[1]

In March 2004, the Food and Drug Administration ("FDA") approved the following qualified health claim (the "Qualified Health Claim"):

> Supportive but not conclusive research shows that eating 1.5 ounces per day of walnuts, as part of a low saturated fat and low cholesterol diet and not resulting in increased caloric intake, may reduce the risk of coronary heart disease. See nutrition information for fat [and calorie] content.

(Zaffrano Decl., ¶ 3; *see also* FAC ¶¶ 23-26, Ex. 2; Declaration of Michael D. Braun in Support of Plaintiff's Motion for Class Certification ("Braun Decl."), Vol. II, Ex. R at ZEISEL 001847).

In approximately late 2004, or early 2005, Diamond placed the Qualified Health Claim immediately after the Structure/Function Claim on the back of certain packages of Shelled Walnut Products, which also contained the Banner (hereinafter, the "Combination Claims"). (Zaffarano Decl., ¶ 4; *see also* FAC ¶¶ 29-30.) Diamond apparently used the Combination Claims on the labels of some, but not all, of its Shelled Walnut Products until approximately February 2010. (Zaffarano Decl., ¶ 4.)

In February 2010, the FDA issued Diamond a warning letter directed to the Combination Claims. (FAC ¶¶ 38-42, Ex. 4.) Diamond responded by stating that it would change its packaging. (*Id.* ¶ 43, Exs. 5-6.) On March 22, 2010, Zeisel filed this putative class action. On June 18, 2010, in response to a motion to dismiss, Zeisel filed the First Amended Complaint ("FAC").

Zeisel alleges that, since 2006, Diamond has "used express and implied statements about the positive effects of omega-3 fatty acid consumption on health to entice consumers to purchase its" Shelled Walnut Products. (*Id.* ¶¶ 1-2; *see generally id.* ¶¶ 6, 28-33, 48-49.) In support of this allegation, Zeisel alleges that "[t]he front and back of the Shelled Walnut

---

[1] Exhibit A to Diamond's opposition brief includes a depiction of the Banner.

2

1 product labels included the phrase 'OMEGA 3 2.5 g per serving' with adjacent heart symbols,"

2 and he alleges that the back of the Shelled Walnut Products contains the following statement:

> *The omega-3 in walnuts can help you get the proper balance of fatty acids your body needs for promoting and maintaining heart health.* In fact, according to the Food and Drug Administration, supportive but not conclusive research shows that eating 1.5 oz. of walnuts per day, as part of a low saturated fat and low cholesterol diet, and not resulting in increased caloric intake, may reduce the risk of coronary disease. Please refer to nutrition information for fat content and other details about the nutritional profile of walnuts.

(*Id.* ¶¶ 29-30 (emphasis added).)

Thus, according to Zeisel, the Shelled Walnut Products bearing the Combination Claims are misbranded because the FDA has not authorized Diamond to use the language emphasized above on its Shelled Walnut Products. (*See id.* ¶¶ 3, 31, 34-46.) Shelled Walnut Products bearing the Combination Claims are misleading because Zeisel believed that "consuming the omega-3 fatty acids found in Diamond's Shelled Walnut Products would be beneficial to him, that it would assist him in getting a proper balance of fatty acids, [and] that it would promote heart health, and that it would reduce his risk of coronary heart disease." In fact the Shelled Walnut Products "did not provide the health benefits that were claimed on the package labels." (*Id.* ¶¶ 48- 49, 73.) Based on these allegations, Zeisel brings claims for violations of California Business and Professions Code §§ 17200, *et seq.* (the "Section 17200 claim"), California Business and Professions Code §§ 17500, *et seq.* (the "FAL claim"), and the California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA Claim"), as well as unjust enrichment.

In his FAC, Zeisel defines the putative class as "all consumers who purchased Diamond of California Shelled Walnuts products on or after March 22, 2006 in the United States." (FAC ¶ 50.) However, Zeisel now moves to certify the following class:

> All persons who purchased Diamond Foods, Inc.'s Diamond of California Shelled Walnut products in 6 ounce, 10 ounce, 16 ounce and/or 3 pound bags from March 22, 2006 through the present bearing labels with the following representations: "OMEGA♥3 ... 2.5 g per serving" and "The omega-3 in walnuts can help you get the proper balance of fatty acids your body needs for promoting and maintaining heart health."

**ANALYSIS**

**A.      Evidentiary Issues.**

In support of its opposition to Zeisel's motion, Diamond submits an expert report prepared by Dr. Gordon Rausser. Zeisel argues that Dr. Rausser's report is irrelevant, because he offers opinions outside of his area of expertise and on ultimate legal issues. The Court relied on Dr. Rausser's declaration solely with respect to Diamond's arguments on whether Zeisel met his burden to show that there is a workable classwide methodology to establish damages. Zeisel does not dispute that this is an area within Dr. Rausser's expertise. Accordingly, Zeisel's objections to the Rausser Declaration are OVERRULED.

In support of his reply brief, Zeisel submits a rebuttal expert report from Dr. Gary L. French. Diamond objects to the report on the basis that it constitutes new evidence and presents arguments that should have been presented in Zeisel's opening brief. In his report, Dr. French responds to Dr. Rausser's opinions on the materiality of the disputed labels. Because the Court did not rely on Dr. Rausser's opinions regarding materiality to resolve the motion, Diamond's objections to these portions of the French report are overruled as moot. In addition, the portions of Dr. French's report that address damages are consistent with the measure of damages proposed by Zeisel in the FAC. Accordingly, Diamond's objections to the French report are OVERRULED.

**B.      Standing.**

As a threshold issue, Diamond argues that the Court must deny Zeisel's motion because he, as well as absent class members, lack standing under Article III of the United States Constitution and lack standing under Section 17200, the FAL, and the CLRA.

**1.      Zeisel.**

In order to satisfy the Constitution's standing requirements, Zeisel must show: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to Diamond's challenged conduct; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In order

4

1 establish that he has standing to sue on the Section 17200 claim, the FAL claim, and the CLRA
2 claim, Zeisel must show that he suffered an "injury-in-fact," and "has lost money or property"
3 as a result of Diamond's alleged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal.
4 Civ. Code § 1780(a); *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 316 (2011)[2]; *In re*
5 *Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009).

6       "[E]ach element [of standing] must be supported in the same way as any other matter on
7 which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence
8 required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561. In the context of a
9 motion for class certification, the Court is required to "perform a rigorous analysis to ensure
10 that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not
11 always, require looking behind the pleadings to issues overlapping with the merits of the
12 underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010).
13 However, the Court "may not analyze any portion of the merits of a claim that do not overlap
14 with the Rule 23 requirements." *Id.*

15       Diamond contends that Zeisel fails to establish the injury-in-fact requirement because he
16 has no physical proof that he purchased Shelled Walnut Products, relying on *Grimes v. Rave*
17 *Motion Pictures Birmingham*, 264 F.R.D. 659 (N.D. Ala. 2010). In the *Grimes* case, the
18 plaintiff filed suit against a chain of movie theaters for alleged violations of the FACTA. The
19 actual credit card receipts would have provided evidence of the alleged violations. Although
20 the *Grimes* court stated that, "[w]ithout a receipt, no plaintiff would have proof of a claim, the
21 *sine qua non* of class membership," the court did not hold that the lack of a receipt precluded
22 the plaintiff from establishing that she had standing to pursue the claim. 264 F.R.D. at 665.

---

[2] In the *Kwikset* case, the California Supreme Court concluded that by using the term injury-in-fact, "the drafters and voters intended to incorporate the established federal meaning." *Kwikset*, 51 Cal. 4th at 322. Because Proposition 64 requires a plaintiff to show that he or she lost money or property, *i.e.* economic injury, a "classic form of injury in fact," the California Supreme Court also noted that "standing under section 17204 [is] substantially narrower than federal standing under article III, ... which may be predicated on a broader range of injuries." *Id.* at 323-24.

5

Rather, the court made this statement in connection with its analysis of whether the class was ascertainable. The Court, therefore, finds Diamond's reliance on *Grimes* to be misplaced.[3]

Diamond also argues that Zeisel lacks standing because he has continued to purchase, and testified that he would continue to purchase Shelled Walnut Products since he filed suit. (*See* Declaration of Jeffrey S. Bosley in Support of Diamond Food, Inc.'s Opposition to Plaintiff's Motion for Class Certification ("Bosley Decl."), Ex. A (Excerpts of Deposition of Eliot Zeisel ("Zeisel Depo.") at 123:14-15, 124:14-16, 146:19-147:4, 148:2-8.) For example, Diamond argues that Zeisel "admitted he would have purchased Shelled Walnuts *even if* the disputed language did not appear on the label." (Opp. Br. at 3:13-14 (emphasis in original, citing Zeisel Depo. at 138:23-139:12).)[4] Diamond also argues that Zeisel has not established that he has standing, because he testified that he purchased Diamond Shelled Walnuts for reasons unrelated to the labels. (*See, e.g.,* Zeisel Depo. at 122:6-24.)[5] According to Diamond, these facts demonstrate that Zeisel has not been injured and has not lost money or property as a result of Diamond's alleged conduct.

Zeisel testified throughout his deposition that he has purchased Shelled Walnuts Products. (Zeisel Depo. at 48:21-23, 119:20-120:5.) Although Zeisel did in fact testify that he purchased Shelled Walnuts Products because he thought they were a good product, Zeisel also testified that he purchased Shelled Walnuts Products because he "was interested in the heart-

---

[3] Diamond also argues Zeisel's proposed class includes persons who lack Article III standing, because they will not be able to establish proof of injury by showing that they purchased Shelled Walnuts Products. For the same reasons the Court concludes that this would not preclude Zeisel from establishing injury-in-fact, the Court finds the lack of a receipt would not necessarily preclude an absent class member from establishing injury-in-fact.

[4] Zeisel's actual testimony is that he "might have" purchased Diamond Walnuts if a statement regarding Omega-3 was not on the label and that his decision would have depended "on how urgent the recipe called for walnuts." (Zeisel Depo. at 138:23-139:12.) In addition, Zeisel submitted an Errata to his deposition, in which he clarified this testimony. (Bosley Decl., Ex. C (Errata).)

[5] In support of this argument, Diamond relies exclusively on *Laster v. T-Mobile, Inc.*, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009). However, in *Laster*, the court addressed the issue of standing in the context of the defendants' motions for summary judgment. Because it concluded the named plaintiffs had not established standing, the court denied their motion for class certification as moot.

6

healthy benefits as advertised on the packaging." (*Id.* at 122:11-13.) According to Zeisel, he made that decision based on the information on the labels. (Zeisel Depo. at 122:10-12, 123:16-25.) "A plaintiff does not need to show that a defendant's misrepresentation was the only cause of the injury producing conduct; rather, the plaintiff need only show that the misrepresentation was a substantial factor in influencing his decision." *Laster*, 2009 WL 4842801, at *5.

The Court evaluates this evidence in accordance with standards applicable to motions for class certification. Applying those standards to the evidence in the record, the Court is satisfied that Zeisel has demonstrated that he has standing to bring these claims on behalf of the class.[6] *See, e.g., Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 333 (N.D. Cal. 2010) (finding that named plaintiffs had standing based on claims that they would not have purchased product at issue had they known of safety defect); *Kwikset*, 51 Cal. 4th at 316 (holding that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue").

### 2. Absent Class Members.

Diamond also urges the Court to deny class certification because absent class members lack Article III standing.[7] Diamond argues that although the California Supreme Court has held that "state courts may permit uninjured individuals to pursue UCL actions in ***state*** court, so long as the class representative has established standing," the Supreme Court's decision did not and could not "remove the standing requirements set forth in Article III, including injury-in-fact and causation." (Opp. Br. at 14:8-13 (emphasis in original, citing *Tobacco II*, 46 Cal. 4th at 324).) The Court does not read *Tobacco II* to hold that a class may include members who have not been injured by a defendant's conduct. Rather, the *Tobacco II* court held that Proposition 64

---

[6] The Court expresses no opinion on whether this evidence would be sufficient to withstand a summary judgment motion.

[7] Diamond's primary argument on this issue is that Zeisel has not met his evidentiary burden to show that class-wide reliance is appropriate in this case. (*See* Opp. Br. at 14:19-21.) Diamond's argument goes to the merits of the case, and it is better addressed in the context of a motion for summary judgment. However, because reliance is relevant to the issue of whether common questions of law and fact predominate, the Court addresses the argument in that section of this Order.

7

"was not intended to, and does not, impose section 17204's standing requirement on absent class members in a UCL class action where class requirements have otherwise been found to exist." *Tobacco II*, 46 Cal. 4th at 324. This holding appears to be in accord with federal authority construing Rule 23. Indeed, the *Tobacco II* court relied heavily on federal cases interpreting the requirements of Rule 23. Thus, it noted that, in general, "standing in a class action is assessed solely with respect to class representatives, not unnamed members of the class." *Id.*, 46 Cal. 4th at 319 (quoting *In re General Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007)).

The *Tobacco II* court also relied on *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420 (N.D. Tex. 1979). In the *Vuyanich* case, the plaintiffs brought race and sex discrimination claims against their employer, and the court originally certified the plaintiffs' proposed class. The employer subsequently moved to decertify the class or, alternatively, to narrow its scope. To support its argument, the employer argued that the named plaintiffs only had standing to raise claims that he or she would be able to assert individually. The court rejected the employer's argument and stated that the employer confused the requirements of Article III with the requirements of Rule 23:

> In a class action ... the trial court initially must address whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class. The trial court generally need not address the final question of whether the class itself, after certification, has standing. If that court, guided by the nature and purpose of the substantive law on which the plaintiffs base their claims, properly applies Rule 23, then the certified class must necessarily have standing as an entity.

*Vuyanich*, 82 F.R.D. at 428; *see also* 1 Newberg on Class Actions § 2:7 (4th ed.) ("In a class action, those represented are, in the words of the Supreme Court, passive members of the class. ... These passive members need not make any individual showing of standing, because the standing issue focused on whether the plaintiff is properly before the court, not whether represented parties are absent class members are properly before the court."); *Cf. Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033-35 (8th Cir. 2010) (noting that if *Tobacco II* is read

1 to permit a single injured plaintiff to represent a class of individuals who might not have a cause of action, "it is inconsistent with the doctrine of standing as applied by federal courts" and noting that "[a]lthough federal courts do not require that each member of a class submit evidence of personal standing, a class cannot be certified if it contains members that lack standing") (internal quotations and citations omitted).[8]

For the reasons set forth above, the Court concludes that, for purposes of this motion, Zeisel has established he has standing to pursue his claims. In addition, the Court can and will ensure that absent class members have standing by conducting a rigorous analysis of the Rule 23 requirements.[9]

### C. Applicable Legal Standards to a Motion for Class Certification.

"Class certifications are governed by Federal Rule of Civil Procedure 23," and a plaintiff seeking class certification bears the burden of "demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Any doubts regarding the propriety of class certification generally should be resolved in favor of certification. *See, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007). Further, "[c]lass certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class."

---

[8] The *Avritt* court upheld the district court's decision to deny a motion to certify a class under Section 17200, because it concluded that district court correctly concluded that "issues of individual reliance would ... be relevant to establishing liability." 615 F.3d at 1034-35. However, in *Avritt*, unlike in this case, there was not evidence that the defendant engaged in a uniform course of conduct. *Id.* at 1035.

[9] The Court also notes that in many of the cases on which Diamond relies, the courts address this issue by looking to whether the class was ascertainable and adequately defined or by looking to whether plaintiffs met their burden on other Rule 23 requirements. *See, e.g., Fine v. Conagra Foods, Inc.*, 2010 WL 3632469, at *2-3 (C.D. Cal. Aug. 26, 2010) (in a false advertising case, denying class certification proposed based on proposed definition of class, which could have included class members who were not injured by alleged conduct, and on the basis that plaintiff had not demonstrated she was typical of the proposed class); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (resolving motion to strike class allegations and, in discussion of whether class was ascertainable, stating that class must be defined in such a way that persons in the class have standing); *Bishop v. Saab Auto. A.B.*, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) (in automobile defect case, finding plaintiffs failed to demonstrate an ascertainable class because "a vast majority of the purported class members lack standing").

9

*Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

**D.  Ascertainability.**

"'Although there is no explicit requirement concerning the class definition in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)). The class definition should be "precise, objective and presently ascertainable." *O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998). While the identity of the class members need not be known at the time of certification, the class definition must "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor*, 184 F.R.D. at 319.

Diamond argues that it is not administratively feasible to determine if a person is a member of the proposed class because it sells its Shelled Walnut products to retailers and it does not track consumer purchases. Diamond also argues that it sells numerous other nut products and that neither the prospective class members nor the Court would have a means by which they could determine whether they purchased the Shelled Walnut products at issue in this litigation. The Court is not persuaded.[10] The proposed class includes (1) all persons (2) who purchased Shelled Walnut Products in 6 ounce, 10 ounce, 16 ounce and/or 3 pound bags (3) which bore labels bearing the Structure Function Claim and Banner (4) from March 22, 2006

---

[10] In *Hodes v. Vans Int'l Foods*, 2009 WL 2424214 (C.D. Cal. July 23, 2009), on which Diamond relies, the court did not conclude that the proposed class was not ascertainable. Rather, the court concluded that the plaintiffs had not established the superiority and predominance requirements of Rule 23(b)(3). *Hodes*, 2009 WL 2424214, at *4-*5. For similar reasons, the Court is not persuaded by other authorities that Diamond relies on in support of this argument. *See, e.g., In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 214 F.R.D. 614, 616-20 (W.D. Wa. 2003) (denying class certification because "individualized factual inquiries required for identification of the proposed class would render this case unmanageable"); *Dumas v. Albers Medical, Inc.*, 2005 WL 2172030, at *5-7 & n. 7 (W.D. Mo. Sept. 7, 2005) (noting that "requirements of ascertainability and administrative manageability, thought distinct, touch upon similar concerns" and denying class certification where court would be required to conduct individualized inquiries to determine class membership). In addition, for the reasons discussed in the remainder of this Order, the Court concludes that the issues rendered by Diamond do not render this case unmanageable.

through the present. The Court does not find this definition to be subjective or imprecise. Rather, it includes objective characteristics that would permit a consumer to identify themself as a member of the proposed class. *See, e.g. Parkinson v. Huyndai Motor America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008); *cf. Keilholtz*, 268 F.R.D at 336 (finding class definition that included persons who lived in the United States who own a home in which the disputed product was installed after a particular date was not subjective or imprecise); *Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (concluding that class of persons who purchased beverage bearing disputed mark or brand, in the United States, during a particular period was ascertainable).

However, Zeisel alleges that he seeks relief on a "national class of consumers," and he asserts claims under the CLRA. Accordingly, the Court concludes that Zeisel has shown the class is ascertainable, but it grants the motion on the condition that the class definition is modified to include "all persons who live in the United States," and to include those persons who purchased Shelled Walnut Products for personal or household use.

### E. Rule 23(a) Requirements

Class certification is appropriate only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

#### 1. The Class is Sufficiently Numerous.

Zeisel first must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Zeisel has not proffered an exact figure for the size of the class. However, based on the evidentiary record regarding the number of labels at issue, the Court can infer there are thousands of potential class members. (*See* Braun Decl., Ex. P at DF004785-001-003; Ex. O, Deposition of Stephen Zaffarano ("Zaffarano Depo.") at 195:5-12). Further, Diamond does not dispute numerosity. (Opp. Br. at 20, n.24.)

1    Accordingly, the Court finds that Zeisel has met his burden to satisfy the numerosity

2 requirement. *See, e.g., Immigrant Assistance Project of L.A. County Fed'n of Labor (AFL-CIO)

3 v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (affirming certification of 11,000 member class);

4 *Chavez*, 268 F.R.D. at 377 (finding numerosity satisfied based on allegation that defendant sold

5 over 500,000 cases of beverages at issue per year);

### 2. Common Questions of Law and Fact Exist.

7    Commonality requires that there be "questions of fact and law which are common to the

8 class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed

9 permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*,

10 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule. The

11 existence of shared legal issues with divergent factual predicates is sufficient, as is a common

12 core of salient facts coupled with disparate legal remedies within the class." *Id*. Zeisel alleges

13 that the putative class was exposed to the same misleading and misbranded labels. According

14 to his theory, the case will focus on whether those statements were reasonably likely to deceive

15 members of the general public and whether they are unlawful. Diamond has not contested the

16 commonality requirement.

17    Accordingly, the Court finds that the proposed class shares sufficient commonality to

18 satisfy the requirements of Rule 23(a)(2). *Cf. Hanlon*, 150 F.3d at 1019-20 (commonality

19 requirement was satisfied because the claims of the proposed class stemmed from the same

20 source, the defendant's product); *Chavez*, 268 F.R.D. at 377 (finding common issues of law and

21 fact existed, namely whether defendant's "packaging and marketing materials [were] unlawful,

22 unfair, deceptive, or misleading to a reasonable consumer").

### 3. The Claims and Defenses Are Typical.

24    Diamond argues that Zeisel is not a typical class member. Typicality requires that "the

25 claims or defenses of the representative parties are typical of the claims or defenses of the

26 class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality

27 requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are

28 'typical' if they are reasonably co-extensive with those of absent class members; they need not

12

1  be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not
2  necessary that all class members suffer the same injury as the class representative."); *Simpson v.*
3  *Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether
4  typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,'
5  not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th
6  Cir. 1992)). Thus, typicality is "'satisfied when each class member's claim arises from the
7  same course of events, and each class member makes similar legal arguments to prove the
8  defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol*
9  *v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)).

10 The record indicates that Zeisel has a specific medical condition that Diamond argues
11 renders him atypical. The Court finds this argument unpersuasive. Based on Zeisel's theory of
12 the case, namely that the Shelled Walnut Products were misbranded and misleading, the Court
13 concludes that his claims - notwithstanding his medical condition - are "reasonably co-
14 extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020; *see Keilholtz*, 268
15 F.R.D. at 339 (finding that named plaintiffs' claims were reasonably co-extensive with those of
16 absent class members where plaintiffs purportedly had not read manual and warnings about
17 product in question may have differed from others).

18 Accordingly, Zeisel satisfies the typicality requirement.

19 **4. Zeisel and His Counsel Will Adequately Represent the Class.**

20 Diamond also contends that Zeisel is an inadequate class representative. "To satisfy
21 constitutional due process concerns, absent class members must be afforded adequate
22 representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. In
23 order to determine whether the adequacy prong is satisfied, courts consider the following two
24 questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest
25 with other class members, and (2) will the representative plaintiffs and their counsel prosecute
26 the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.
27 2003); *see also Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)
28 (noting that representative plaintiffs and counsel also must have sufficient "zeal and

1    competence" to protect the interests of the class). "'[T]he adequacy-of-representation
2    requirement is satisfied as long as one of the class representatives is an adequate class
3    representative.'" *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (quoting
4    *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d
5    1152, 1162 n.2 (9th Cir. 2001) (brackets added in *West*)).

6    Diamond's first challenge to Zeisel's adequacy is based, in part, on the same arguments
7    it raises in connection with standing and typicality. For the reasons set forth above, the Court
8    rejects these arguments. Diamond also contends that Zeisel "lacks credibility on essential
9    elements of the class claims," based on his Errata. Some courts have considered the credibility
10   of a class representative to be relevant to the issue of adequacy. However, in general,
11   credibility will undermine a class representative's adequacy only when it bears directly on
12   issues related to the litigation or where there are "confirmed examples of dishonesty." *See, e.g.,*
13   *Harris v. Vector Mktg. Copr.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citing cases).
14   Although Zeisel did not choose to amend every answer in his deposition relating to the subject
15   matter in the Errata, on this record the Court cannot say his "credibility is so open to question
16   that it is likely to harm [his] case." *Buzoiu v. Risk Mgmt. Alternatives, Inc.*, 2004 WL 1505061,
17   at *3, *6 (E.D. Pa. June 14, 2004) (denying class certification where plaintiff submitted errata
18   making numerous changes to deposition and when plaintiff was deposed again had
19   contradictory explanations, which in part "defied common sense").

20   Diamond also argues that Zeisel is an inadequate class representative because he is
21   friends with one of the attorneys who seek to represent the putative class. Diamond has not,
22   however, challenged the adequacy or ability of the other attorneys' who seek to represent the
23   class. Further, Diamond presents no evidence that Zeisel's relationship with Ms. Speilberg has
24   created an actual conflict. On these facts, the Court concludes that Zeisel's relationship with
25   Ms. Speilberg does not render him inadequate.

26   Accordingly, he Court concludes Zeisel has met his burden to show he is an adequate
27   representative and that counsel will adequately represent the class.
28

14

### E. Rule 23(b)(3) Requirements

In order to certify a class under Rule 23(b)(3), Zeisel must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and he also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

#### 1. Common Issues Predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007) (quoting *Las Vegas Sands*, 244 F.3d at 1162, in turn quoting *Amchem,* 521 U.S. at 623). In order to determine whether common issues predominate, the Court decides neither the merits of the parties' claims or defenses nor "whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 489 (C.D. Cal. 2006). In order to determine whether common questions predominate, the Court must analyze the elements of each of the claims Zeisel asserts against Diamond. *See Keilholtz*, 268 F.R.D. at 342.

#### 1. The Section 17200 and FAL Claims.

Zeisel contends that Diamond's conduct violates each prong of Section 17200. Diamond opposes Zeisel's motion on the basis that reliance and damages are issues that are not subject to common proof. (Opp. Br. at 24:9-25:26.) However, as discussed above, Zeisel's claims under Section 17200 do not require an individualized showing of reliance. Rather, "relief under the UCL is available without individualized proof of deception, reliance and

15

injury." *Tobacco II*, 46 Cal. 4th at 320; *cf. Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) ("Unlike a common law fraud claim, a UCL fraud claim requires no proof that the plaintiff was actually deceived. ... Instead, the plaintiff must produce evidence showing a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.") (internal citations and quotations omitted).

Diamond's argument and evidence focus largely on its position that the disputed labels were not material to a reasonable consumer. That argument goes to the merits of Zeisel's claims, and Diamond does not argue persuasively that Zeisel would be unable to establish reliance by means of common proof. Similarly, Diamond fails to rebut Zeisel's argument that the issues of whether the labels were misbranded and whether its conduct was "unfair," within the meaning of Section 17200, also are capable of resolution by common proof.

In his FAC, Zeisel seeks "[r]estitution in such amount that Plaintiff and all Class members paid to purchase Shelled Walnut products, or the profits Diamond obtained from those transaction." (FAC, Prayer for Relief, ¶¶ B; *see also* French Report, ¶ 14.) Diamond argues that Zeisel has not proffered a viable method of proving restitution for his Section 17200 claim. Zeisel contends that he will be able to prove the proper amount of restitution by relying on documents produced by Diamond relating to net sales, profits, and costs, as well as retail prices of its Shelled Walnut Products. "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez*, 268 F.R.D. at 379 (internal citations and quotations omitted). Dr. Rausser argues that Zeisel's proffered method of determining damages is incorrect, but he concedes that the "method is certainly executable." (Rausser Decl., ¶ 36.)

Accordingly, the Court is satisfied that, at this stage of the proceedings, Zeisel has demonstrated that common issues of law and fact predominate on the Section 17200 claim.

**2. CLRA Claim.**

Diamond also challenges Zeisel's ability to show that common issues of law and fact predominate on the CLRA claim, and it again focuses its arguments on reliance and damages. Zeisel acknowledges that reliance is an element of the CLRA claim. However, "reliance on the

16

alleged misrepresentations may be inferred as to the entire class if [Zeisel] can show that material misrepresentations were made to the class members." *Chavez*, 268 F.R.D. at 376 (citing *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010). Materiality "is determined from the perspective of the reasonable consumer." *Keilholtz*, 268 F.R.D. at 343 (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007)).

Zeisel contends that each class member was exposed to the same allegedly misleading and misbranded labels. Thus, as in the *Chavez* case, assuming Zeisel can prove the representations were material, Zeisel could establish an inference of reliance on behalf of the class. *Chavez*, 268 F.R.D. at 376; *see also Keilholtz*, 268 F.R.D. at 343; *Brazil v. Dell, Inc.*, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) (concluding plaintiff could establish reliance through common evidence because alleged misrepresentations were made at point of sale "as part of a standardized on-line purchasing process"). For the reasons set forth above, the Court is satisfied that Zeisel has established that the issue of materiality can be established by common proof. In addition, although Dr. Rausser contends that Zeisel's proposed method for determining damages will produce "erroneous results," he does not seriously contest that there are common means of proving up damages under Zeisel's theory, *i.e.* that he and absent class members should recover the purchase price of Shelled Walnut Products.

### 3. Unjust Enrichment.

In order to prove up the unjust enrichment claim, Zeisel must show Diamond received a benefit and that it unjustly retained that benefit at the expense of Zeisel and the class members. Diamond's sole argument that common issues of law and fact do not predominate on this claim is its argument that Zeisel has not shown a viable method of proving damages on a classwide basis. For the reasons set forth above, the Court concludes that Zeisel has provided a method by which damages can be established by common proof. Whether or not that method is ultimately successful is a question not ripe for resolution at this time.

Accordingly, the Court concludes that Zeisel has met his burden on the predominance requirement.

### 2. A Class Action is a Superior Method of Resolving this Action.

A plaintiff can satisfy the superiority requirement when he or she can show that "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this determination, the Court should consider the following factors: "the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Diamond does not address the first three factors in its opposition. It is evident that there are potentially thousands of class members with small claims. There are no other actions pending that relate to the issues raised herein. There is nothing in the record to suggest that concentrating the litigation in this forum would be undesirable. As such, the first three factors weigh in favor of finding a class action a superior method of adjudicating this case.

Diamond's argument that a class action is not superior is based on its contention that a class action will not be manageable. Specifically Diamond argues that "Zeisel is silent on his burden to show the Court how to manage 'tens of thousands' of people to prove," *inter alia*, that they purchased a Shelled Walnut Product bearing the disputed label. (Opp. Br. at 26:7-9.) The Court already concluded that the class is ascertainable, and its finds Diamond's argument equally unavailing on the issue of manageability. "Manageability concerns must be weighed against the alternatives and 'will rarely, if ever, be in itself sufficient to prevent certification of a class.'" *Campbell v. PricewaterhouseCoopers*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004)). Given the large number of potential class members and small amount of the claims, the Court concludes that a class action is a superior method of resolving this case.

//
//

**CONCLUSION**

Accordingly, for the foregoing reasons, the Court GRANTS Zeisel's motion for class certification. The parties are scheduled to appear for a further case management conference on June 17, 2011. The parties shall submit a further case management conference statement by no later than June 10, 2011, and the parties should not repeat information set forth in previous case management conference statements.

**IT IS SO ORDERED.**

Dated: June 7, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE