**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT ZEISEL, on behalf of himself and all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>DIAMOND FOODS, INC., a Delaware corporation,<br><br>   Defendant.<br>_____/ | No. C 10-01192 JSW<br><br>**ORDER RE PLAINTIFF'S MOTION TO APPROVE PLAN AND FORM OF NOTICE AND CLASS DEFINITION, VACATING HEARING, AND SETTING STATUS CONFERENCE** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Approve Plan and Form of Notice and Class Definition, filed by Plaintiff, Elliot Zeisel ("Zeisel"). The Court has considered the parties' papers, relevant legal authority, the record in this case, finds the matter suitable for disposition without oral argument and VACATES the hearing on this motion. *See* N.D. Civ. L.R. 7-1(b).

The Court's ruling on certain issues raised by this motion are set forth herein, and the parties are HEREBY ORDERED to appear for a status conference on October 14, 2011 at 1:30 p.m. to address the issues that remain outstanding. The parties shall file a joint status report by no later than 11:00 a.m. on October 12, 2011, that includes the additional information required by this Order.

//

//

**BACKGROUND**

On June 7, 2011, the Court granted Zeisel's motion for class certification. (Docket No. 152.) On July 25, 2011, the parties engaged in an unsuccessful mediation. On September 9, 2011, Zeisel filed the instant motion, in which he asks the Court to approve proposed forms of notice to the class, the method of providing notice to class members, and the schedule by which class members must opt-out. The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.   Applicable Legal Standard.**

Federal Rule Civil Procedure 23(c) requires that the Court "must direct class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The purpose of providing notice to absent class members is to satisfy the requirements of due process, that is to give them notice of the action and the opportunity to opt-out. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010).

**B.   The Class Definition.**

As a threshold matter, the Court addresses the issue of the Class Definition. In his motion, Zeisel argues that retailers and distributors are class members for purposes of the Section 17200 Claim, the FAL claim and the unjust enrichment claim. For the following reasons, the Court finds that retailers and distributors are not members of the class. Throughout this litigation, Zeisel sought relief on behalf of a "national class of consumers." (*See, e.g.,* Docket No. 1 (Compl. ¶ 1); Docket No. 15 (First Amended Complaint ¶¶ 1-2, 28-33, ); Docket No. 75 (Motion to Certify Class at 2:4).) In his motion for class certification, although he argued that the Class Definition should be modified to include "all persons who purchased" certain sizes Shelled Walnut Products that bore the Disputed Labels, Zeisel did not explicitly argue that distributors or retailers were intended to be included within the class and the argument on Rule 23's requirements did not clearly address why retailers and distributors would be members of the class. (*See generally* Docket Nos. 75, 121.)

United States District Court
For the Northern District of California

The Court has considered Zeisel's citations to the reply brief filed in support of his motion for class certification. The Court does not find that Zeisel's passing reference to the type of notice provided in *Chavez v. Blue Sky Beverages, Inc.*, No. 06-cv-6609-JSW ("*Chavez*"), clearly showed that he was arguing that retailers and distributors would be class members. In addition, although Zeisel relies heavily on the briefs filed in *Chavez* to support his argument, this Court recently confirmed that retailers and distributors were not members of the class in that case. *See Chavez v. Blue Sky Natural Beverage Co.*, No. 06-cv-6609, Docket No. 291 (Order Denying Motions for Summary Judgment and Motion to Decertify Class at 11:10-14 ("distributors and retail sellers are not included in the class definition"); *see also id.* Docket No. 151 (Order Approving Class Notice, Appendix 1 ("Purchasers who bought such a beverage for resale are not included.").)

So that the record is clear, the Court granted Zeisel's motion on the condition that the class definition be modified to include "all persons who live in the United States," and to include those persons who purchased Shelled Walnut Products for personal or household use. The Court did not intend to create a separate class definition for the claim brought pursuant to the Consumer Legal Remedies Act. Rather, the Court intended to modify Zeisel's proposed class definition so that it encompassed all claims and also reflected that this case is a consumer class action.

The parties also dispute whether the Class Definition should include an end-date or whether it should be open ended. Zeisel proposes that the Class Definition should include consumers who purchased the Shelled Walnut Products with the Disputed Labels between March 22, 2006 to June 7, 2011. Diamond argues that the Class Definition should include consumers who purchased the Shelled Walnut Products with the Disputed Labels after March 22, 2006. The Court agrees with Zeisel that an end date is prudent.

Therefore, the Court proposes that the Class Definition be modified as follows, as set forth in bold:

> All persons in the United States who, **for personal or household use**, purchased Diamond of California Shelled Walnuts in 6oz, 10oz, 16 oz and 3lb bags from March 22, 2006 through **date of the Court's order approving form of notice ("the Shelled Walnut Products")**) bearing

**United States District Court**
For the Northern District of California

1
2
3
4

      labels that say "OMEGA❤3...2.5 g per serving" on the front and back of the package, and "The omega-3 in walnuts can help you get the proper balance of fatty acids your body needs form promoting and maintaining heart health" on the back of the package (**the "Disputed Labels"**). **Purchasers who bought Shelled Walnut Products with Disputed Labels for resale are not included.**

5       The Court shall afford the parties one further opportunity to meet and confer regarding

6 the Class Definition.  In the status conference statement required by this Order, the parties shall

7 notify the Court: (1) whether they are able to agree on this Class Definition; (2) whether they

8 have agreed upon a modified definition; or (3) are still unable to resolve there differences, and if

9 they are unable to agree, what disputes remain.

10 **C.      Method and Timing of Notice.**

11       Zeisel has proposed the following plan to provide notice: (1) Zeisel will retain the

12 services of an experienced class action administrator; (2) the administrator will arrange to

13 publish a Short Form Class Notice ("Summary Notice") on one occasion in *U.S.A. Today* and

14 on one occasion in either *Bon Appetit* or *Cooking Light*, and via newswire; (3) the creation of a

15 website and a toll-free telephone number where class members can obtain more information

16 including a Long Form Notice; (4) and mailing the Long Form Notice to retailers and

17 distributors with a letter requesting that retailers and distributors post the Summary Notice.

18 Diamond does not object in principle to notice by publication or by website, but it argues that

19 Zeisel has not provided sufficient evidence to show that this plan is the best notice practicable

20 under the circumstances.

21       In his reply brief, Zeisel states that he has engaged Rust Consulting, Inc. to administer

22 the notice process.  (*See* Declaration of Tiffaney A. Janowicz ("Janowicz Decl."), ¶¶ 1-2.)  Ms.

23 Janowicz also attests that Rust will engage Kinsella Media, "a nationally recognized class

24 action media placement firm, to place publication notice as directed by the Court."  Based on

25 the Janowicz declaration, as well as the declaration provided by Alicia Gehring, the Court finds

26 that Rust has the experience and capability of administering the notice process, and that

27 Kinsella Media has the capability and experience to place any publication notice directed by the

28

Court. (*See* Declaration of Alicia Gehring ("Gehring Decl.")) Zeisel also attests that Rust will create and maintain the website. (Janowicz Decl., ¶ 6.)

The Court has considered Ms. Gehring's declaration, in which she sets forth circulation rates and average readership figures for *U.S.A. Today, Cooking Light* and *Bon Appetit*. (Gehring Decl., ¶¶ 3-8.) The Court concludes that Zeisel has not established that a one time publication of the Summary Notice in *U.S.A. Today* and one of the two magazines, even in conjunction with a newswire release, is sufficient. Accordingly, the parties are also ordered to meet and confer on the issue of the number of times notice should be published in these publications.

Zeisel also proposes sending notice via first class mail to retailers and distributors, with a letter asking that the retailers and distributors post the short form notice in retail locations. Unlike the Defendants in the *Chavez* case, Diamond objects to this proposed method of notice. The Court has concluded that retailers and distributors are not members of the class, and, therefore, finds that notice by mail to retailers and distributors is not required. Moreover, Zeisel has not asked the Court to order that retailers and distributors post the Summary Notice. Rather, he argues that posting would be purely voluntary. The Court finds that a purely voluntary posting procedure, by persons who are not members of the class and whose conduct is not at issue, is not warranted in this case.

The parties also disagree on Zeisel's proposed timing. Zeisel has proposed that Class Members be required to opt-out by January 27, 2012, three days before the current trial date. Diamond argues that if the Court accepts Zeisel's proposed notice plan, the current schedule should be adjusted so that notice goes out well before trial and before the Court has ruled on summary judgment motions. In his reply, Zeisel proposes an alternative that would require publication on two occasions in *U.S.A. Today* and an opt-out date between November 30, 2011 and December 15, 2011. Zeisel then suggests that the Court defer ruling on the motion for summary judgment until after the opt-out deadline, which would still permit the parties "ample time" to prepare for trial.

1    Zeisel's alternative position is not a viable alternative. The pretrial conference is
2 scheduled for January 9, 2012. Under this Court's guidelines for civil jury trials, the parties'
3 pretrial filings, including motions in limine, would be due on December 26, 2011. Thus, if the
4 Court were to defer issuing a ruling on the motion for summary judgment until December 16,
5 2011, the parties would not have "ample time" to digest that ruling and prepare their pretrial
6 filings.[1]

7    Accordingly, the Court shall CONTINUE the hearing date on the motion for summary
8 judgment, the pretrial conference, and the trial date for a period of at least three months.[2] In
9 order to give the parties the opportunity to coordinate their schedules, they shall also include a
10 proposed revised schedule in the status conference statement required by this Order. In
11 addition, because Diamond has filed its motion for summary judgment, the parties also shall
12 meet and confer on a proposed briefing schedule for that motion.

13 **E.   Form of Notice.**

14    The parties also have several disputes regarding the language used in the Summary and
15 Long Form Notices. Rule 23 requires that the notice include the following information "(i) the
16 nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or
17 defenses; (iv) that a class member may enter an appearance through an attorney if the member
18 so desires; (v) that the court will exclude the class any member who requests exclusion; (vi) the
19 time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on
20 members under Rule 23(c)(3)." *Id.*

21    In general, the Court finds that the Summary Notice and the Long Form Notice include
22 the required information. One of the parties' key disputes is how to characterize Zeisel's
23 claims. In his Amended Complaint, Zeisel alleges that the Shelled Walnut Products were
24 "misbranded" and "misleading." The Court recognizes that Diamond denies those allegations.
25 The Court is inclined to remove Zeisel's proposed "unlawful" language from the notice in favor

---

[1] The Court is inclined to require at least 45 days between notice and the opt-out deadline.

[2] Zeisel chose not to file a motion for summary judgment by the deadline by which dispositive motions were to be filed. The Court shall not extend that deadline.

6

1  of "misbranded." However, in light of the Court's ruling on the Class Definition, and in light of
2  the fact that Zeisel submitted additional proposed revisions in his reply brief, the Court shall
3  give the parties one final opportunity to meet and confer on their differences.

4      The status report required by this Order shall advise the Court whether the parties have
5  been able to agree upon the language used in the form notice. If they are not able to agree, the
6  parties shall outline their specific differences, and shall submit a redlined version of the
7  proposed forms of notice with their status report. The Court will provide its final rulings on the
8  language of the form notice at, or shortly after, the status conference on October 14, 2011.

9  **IT IS SO ORDERED.**

10  Dated: October 3, 2011



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California