**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT ZEISEL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND FOODS, INC., a Delaware corporation,<br><br>Defendant.<br>_____/ | No. C 10-01192 JSW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARD** |

**INTRODUCTION**

This matter comes before the Court on consideration of the unopposed motion for final approval of class action settlement and motion for attorneys' fees, reimbursement of expenses, and Plaintiff's incentive award, filed by Plaintiff Elliot Zeisel ("Zeisel"). The Court has considered the parties' papers, including the supplemental briefing, relevant legal authority, and the record in this case.

On October 12, 2012, the Court held a final approval hearing. Counsel for Zeisel and counsel for Defendant, Diamond Foods, Inc. ("Diamond") appeared and argued at that hearing. Apart from counsel, there were no other persons who appeared to argue either for or against the settlement. For the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS the motion for final approval and GRANTS IN PART the motion for attorneys' fees, reimbursement of costs, and Zeisel's incentive award.

**BACKGROUND**

The Court has set forth the facts and procedural history underlying this dispute in prior orders, and the parties' familiarity with those facts and the procedural history is presumed. (*See, e.g.,* Docket Nos. 30, 152.) In brief, Zeisel brought claims against Diamond for violations of California Business and Professions Code sections17200, *et seq.* (the "Section 17200 claim"), California Business and Professions Code sections 17500, *et seq.* (the "FAL claim"), and the California Consumer Legal Remedies Act, California Civil Code sections 1750, *et seq.* (the "CLRA Claim"), as well as unjust enrichment. (*See* Docket No. 201, Second Amended Complaint ("SAC").) These claims were based on allegations that Diamond's Shelled Walnut Products bearing certain labels were misleading because the Shelled Walnut Products "did not provide the health benefits that were claimed on the package labels" (the "Disputed Labels"). (*See, e.g.,* SAC ¶¶ 49-51.)

On January 30, 2012, the Court issued an Order preliminarily approving the Settlement Agreement. (Docket No. 210.) On August 20, 2012, the Court issued an Order directing the parties to submit supplemental briefing addressing that portion of the Settlement Agreement that calls for a *cy pres* award. (Docket No. 220.) The Court also directed the parties to submit supplemental briefing on the request for attorneys' fees.

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.   The Court Approves the Settlement.**[1]

In order to determine whether the proposed settlement should be approved, the Court weighs a number of factors, including: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the

---

[1] On June 7, 2011, the Court granted Zeisel's motion for class certification. (Docket No. 152.) For the reasons set forth in that Order, the Court finds that, for purposes of settlement, the requirements of Rule 23 have been met with regard to the Settlement Class. The Court also finds that the form and manner of the notice that was given to the class is the best notice practicable under the circumstances and has been given in full compliance with Rule 23.1 and due process. (*See* Docket No. 194, Order re Form of and Method of Class Notice; Docket No. 215-2, Declaration of Katie Horton, ¶¶ 3-8.)

2

stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the ... members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1. The amount of settlement, results achieved, the strength of Zeisel's case and the risk of further litigation.

In this case, the parties agreed that Diamond will fund settlement restitution claims up to $2.6 million. (Docket No. 205-1, Settlement Agreement, Sec. II, ¶ 34, Sec. XII, ¶ 4.3 .) The Settlement Agreement also provides that

> [o]nce all proper Class Member Claims are paid, any residual restitution will be considered *cy pres* which Diamond will donate to non-interested, national, geographically diverse, third party food bank(s) in the form of food products. Diamond will provide food products whose retail value totals the Residual Restitution at times of Diamond's choosing within eighteen (18) months following the Effective Date. The donations shall be spread throughout the year rather than at one time in order to facilitate the food banks' ability to meet needs throughout the year.

(*Id.*, Section III.C, ¶ 2.e.)

The Ninth Circuit recently reiterated the standards required for approval of *cy pres* distribution. *See Dennis v. Kellogg*, – F.3d –, 2012 WL 3800230 (9th Cir. Sept. 4, 2012); *see also Lane v. Facebook*, – F.3d –, 2012 WL 4125857 (9th Cir. Sept. 20, 2012). Thus, in order "[t]o ensure that the settlement retains some connection to the plaintiff class and the underlying claims ... a *cy pres* award must qualify as the 'next best distribution' to giving the funds directly to the class members." *Dennis*, 2012 WL 3800230, at *5 (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)). Further, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy* pres beneficiaries.'" *Id.* (quoting *Naschin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). That is, the *cy pres* award must bear "a direct and substantial nexus to the interests of absent class members and thus properly provide[] for the 'next best distribution' to the class." *Lane*, 2012 WL 4125857, at *6.

Thus, any *cy pres* award must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members;' and (3) ... must not benefit a group

1  'too remote from the plaintiff class.'" *Dennis*, 2012 WL 3800230, at *5 (quoting *Naschin*, 663
2  F.3d at 1039 and *Six Mexican Workers*, 904 F.2d at 1308). A court "should not find the
3  settlement fair, adequate and reasonable unless the *cy pres* remedy 'account[s] for the nature of
4  the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent
5  class members.'" *Lane*, 2012 WL 4125857, at *4 (quoting *Naschin,* 663 F.3d at 1036).

6  This case is distinguishable from *Lane* and *Dennis*, in that the parties settled only after
7  this Court had certified a nationwide settlement class. Thus, this case is not subject to the
8  heightened scrutiny and probing inquiry that would be required if the parties had reached a
9  settlement prior to class certification. *See, e.g., Lane*, 2012 4125857, at *4; *Dennis*, 2012 WL
10 3800230, at *4. Although the Settlement Agreement did not select a specific organization to
11 receive any Residual Restitution, in response to the Court's request for supplemental briefing,
12 the parties identify the American Heart Association ("AHA") as the recipient of any Residual
13 Restitution.[2] (*See* Docket No. 227, Diamond Supp. Br., Ex. A; Docket No. 228, Declaration of
14 Stephen Sibert ("Sibert Decl.").) Thus, the Court is now able to assess whether the *cy pres*
15 award "'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying
16 statutes, and the interests of the silent class members.'" *Lane*, 2012 WL 4125857, at *6
17 (quoting *Naschin,* 663 F.3d at 1036).

18 The AHA is a nationwide organization, which reflects the fact that the Court approved a
19 nationwide class and thus enables to Court to evaluate whether any Residual Restitution would
20 benefit "'areas where the class members may live.'" *Dennis*, 2012 WL 3800230, at *5 (quoting
21 *Six Mexican Workers*, 904 F.2d at 1308). According to the record, the AHA provides education
22 on issues relating to heart healthy food, including education about how to read food labels. (*See*
23 Diamond Supp. Br., Ex. A.) Zeisel's claims arose because he contended that the Disputed
24 Labels were misleading as to the heart health benefits of the Shelled Walnut Products.
25 Although Zeisel's claims were premised on the allegedly false and misleading nature of the
26 Disputed Labels, Zeisel repeatedly referenced the Federal Food, Drug and Cosmetic Act

---

[2] They also identify a number of food banks across the nation that have an educational component to their programs as alternative choices.

4

("FDCA"), 21 U.S.C. §§ 301, *et. seq.*, to support his alleged violations of California's UCL, CLRA, and FAL. The Settlement Agreement provides that the food donations that constitute the *cy pres* award will be valued at retail value, and Diamond attests that these donations will be in addition to any other donations that Diamond may be obligated to make. (Settlement Agreement, § III.C, ¶ 2.e; Sibert Decl., ¶ 2.)) The Court finds that the AHA's educational programs provide the requisite nexus to the nature of Zeisel's claims, the purpose of the underlying statutes, *see, e.g.,* 21 U.S.C. § 393(b)(2)(A), and provides for the next best distribution to the class.

In addition to monetary relief, the Settlement Agreement also provides for changes to the Disputed Labels and Diamond's website. (Settlement Agreement, § III.C, ¶ 1.) The settlement also removes the risk that the Zeisel and the Class Members might not recover anything. *See, e.g., Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

The parties have vigorously litigated this case by way of a motion to dismiss and a fully litigated motion for class certification. In addition, Diamond had filed its motion for summary judgment, before the parties attended a mediation that resulted in the settlement. (*See* Docket No. 198.) The fact that Diamond did not convince the Court to dismiss this case at the pleadings phase does not mean that it could not have prevailed on summary judgment or at trial. Similarly, although Zeisel prevailed on the motion for class certification, the Court could have revisited that decision at any point before trial.

**2. The extent of discovery completed, the stage of the proceedings, and the experience and views of counsel.**

As discussed in the preceding section, the settlement did not come early in this litigation. After Diamond unsuccessfully moved to dismiss Zeisel's complaint, the parties conducted discovery on class certification and the merits of the case. Zeisel also engaged an expert to address issues relating to class damages. As such, the parties reached the proposed settlement at time when they had a full and fair understanding of their cases and their opponents' case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (factor

5

1 weighed in favor of approving settlement where parties had conducted extensive discovery and
2 had gone through a round of summary judgment motions); *In re Mego Fin. Corp. Sec. Litig.*,
3 213 F.3d 454, 459 (9th Cir. 2000) (factor weighed in favor of approving settlement where
4 plaintiffs had conducted significant discovery and consulted with damages and accounting
5 experts). Furthermore, Zeisel's counsel have extensive experience in prosecuting complex
6 consumer litigation, and they attest that the settlement is beneficial to the Class Members. (*See,
7 e.g.,* Docket No. 215-1, Declaration of Michael D. Braun, ¶¶ 9-10, 12.) The Court may consider
8 their view in determining whether or not to approve the settlement. *See In re Mego Fin.*, 213
9 F.3d at 459.

### 3. The reaction of Class Members to the proposed settlement.

According to the record, only one person has chosen to opt out of the proposed settlement. (*See* Docket No. 215-2, Declaration of Katie Horton, ¶ 10; Docket No. 218, Supplemental Declaration of Katie Horton, ¶ 4.) As of September 7, 2012, over 23,000 class members had submitted claims. The claims period does not expire until October 26, 2012, and class members continue to file claims at an approximate rate of over 1,000 claims per week. (Docket No. 225, Supplemental Declaration of Katie Horton, ¶¶ 4-7.) The Court also has not received any objections to the Settlement Agreement. The Court finds that the reaction of the class to the Settlement Agreement is favorable. *See, e.g., Rodriguez*, 563 F.3d at 967.

Accordingly, for the foregoing reasons, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate, and the Court GRANTS the motion for final approval.

**B. The Court Grants, in part, the Motion for Attorneys' Fees, Reimbursement of Costs and Zeisel's Incentive Payment.**

The terms of the Settlement Agreement provide that Diamond not oppose a request for Zeisel's attorneys' fees and costs in an amount up to $850,000. (Settlement Agreement, § VIII, ¶ 1.) These fees will not be paid from the funds used to pay Class Members' claims. The terms of the Settlement Agreement also provide that the Court may issue an incentive award to Zeisel in an amount up to $5,000, which shall be deducted from the Settlement Fund. (*Id.*) Although a

specific fund has not been created to pay the claims of Class Members, Zeisel presented his request for attorneys' fees as a "common fund" case, and the parties have identified a sum certain from which claims will be paid. Where "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headsets Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Within the Ninth Circuit, the typical benchmark for a percentage of recovery method is 25%, however courts may adjust this percentage when special circumstances warrant a departure and they set forth adequate reasons for the departure. *Id.* In this case, 25% of the $2,600,000 to be set aside to pay Class Members' claims is about $650,000. Thus, Zeisel's request for $850,000 amounts to a bit more than 30% of the settlement amount. As discussed above, this is not a case where the parties reached an agreement shortly after Zeisel filed suit. Rather, Diamond moved to dismiss, albeit unsuccessfully, and the parties vigorously litigated whether class certification was appropriate. In addition, the parties settled only after Diamond filed its motion for summary judgment, and the attorneys' fees and costs will not be paid from the $2.6 million.

The Court also has cross-checked the percentage of recovery method against the lodestar method. According to the record, Zeisel's lodestar is $1,277,904.25, with $160,373.64, in out-of-pocket costs. Thus, of the $850,000, counsel will receive approximately $689,626.36 in fees, bringing the fees closer to the 25% bench mark. (*See* Docket No. 223, Declaration of Class Counsel, Exs. 1-3; Docket No. 224, Supplemental Declaration of Joseph N. Kravec, Jr.; Docket No. 229, Supplemental Declaration of Michael D. Braun; Docket No. 230, Supplemental Declaration of Janet Lindner Speilberg.) This results in a negative multiplier of .54 under the lodestar method. For these reasons, the Court finds the fee award to be reasonable in light of the time expended by counsel and the benefits to be conferred upon the Class Members. Accordingly, the Court grants the motion for attorneys' fees.

Plaintiff also request that the Court approve an incentive payment in the amount of $5,000.00 to be awarded Zeisel. "Incentive awards are fairly typical in class action cases."

7

*Rodriguez*, 563 F.3d at 958. However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin.*, 213 F.3d at 463. In general, an incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West*, 563 F.3d at 958-59.

On October 11, 2012, Zeisel submitted a declaration in which he attests that he has spent approximately 27 hours on this case since its inception, sixteen hours of which was related to his deposition. (Docket No. 235, Declaration of Eliot Zeisel, ¶ 4.) Zeisel attests that he is a psychoanalyst and, in order to travel to his deposition and participate in that deposition, he had to forego two group sessions and six individual patients, which resulted in a loss of income of $3,900.00. (*Id.* ¶¶ 3-5.) Apart from this lost income, Zeisel does not suggest that he undertook any great risk to either his finances or to his reputation in bringing this action. The Court concludes that an incentive award is appropriate but not in the amount Zeisel has requested. Accordingly, the Court grants the motion for an incentive award in the amount of $3000.00.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for final approval of the settlement, and GRANTS, IN PART, the motion for attorneys fees, costs, and incentive award. It is FURTHER ORDERED that:

1.  With this final approval of the Settlement Agreement, the Releases that are set forth in Section VII of the Settlement Agreement are expressly incorporated herein in all respects and are effective as of the date of this Order and the separately issued judgment. The Released Parties (as that term is defined in Section II of the Settlement Agreement) are forever discharged from any claims or liabilities arising from, or in any way relating to the Released Claims (as that term is defined in Section II of the Settlement Agreement).

2.  The terms of the Settlement Agreement, this Order, the Judgment, including all exhibits thereto, shall be forever binding on and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by Zeisel and all other Class Members who did not

timely exclude themselves from the Class, as well as their heirs, executors and administrators, successors and assigns.

3. This action (and any and all claims asserted herein at any time) is dismissed in its entirety, on the merits, with prejudice, and without leave to amend, with each party to be his/her/its own costs and attorneys' fees, except as otherwise expressly provided in this Order, and all Class Members who did not timely and properly execute and submit a Request for Exclusion shall be forever barred and permanently enjoined from starting, continuing, or participating in, litigating, or receiving any benefits or relief from any other lawsuit, arbitration, or administrative or regulatory proceeding or order based on or relating to the claims, facts, or circumstances in this Action and/or the Released Claims, with the exception of claims relating to the enforcement of the Settlement Agreement.

3. Diamond shall implement the terms and conditions of the Settlement Agreement, including payment to all Class Members who have not excluded themselves from this settlement and who submit a timely, valid Claim pursuant to the Settlement Agreement. To the extent that, at the end of eighteen (18) months, Diamond has not completed its obligation to donate the retail value of any Residual Restitution in the form of food to the AHA, the parties shall notify the Court of this fact and submit for approval, pursuant to this Court's continuing jurisdiction, a proposal for extending the time period for making additional donations to the AHA.

4. Within thirty days of the Effective Date (as defined in the Settlement Agreement), Diamond shall pay Class Counsel $850,000 in fees and expenses to: Stember Feinstein Doyle Payne & Kravec, LLC, 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, Pennsylvania, 15219; Law Offices of Janet Lindner Speilberg, 12400 Wilshire Boulevard, #400, Los Angeles, California, 90025; and Braun Law Group, 10680 West Pico Boulevard, Suite 280, Los Angeles, California, 90064.

5. Within thirty days of the Effective Date (as defined in the Settlement Agreement), Diamond shall pay Zeisel the amount of $3,000, which shall be deducted from the $2.6 million used to pay Class Members' claims.

6. The Settlement Agreement, this Order, and the Judgment (or any document referred to herein or any action taken to carry out this Order) is not, may not be construed as, and may not be used as an admission or concession by or against Diamond of the validity of any claim or any actual or potential fault, wrongdoing, or liability whatsoever. Entering into or carrying out the Settlement Agreement (or exhibits thereto), and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials and defenses by Diamond, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than as evidence of the settlement or to enforce the provisions of this Order and the Settlement Agreement, provided, however, that this Order and the Settlement Agreement (including the exhibits thereto) may be filed in any action against Diamond to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion, or similar defense or counterclaim.

7. The Court shall retain jurisdiction over this matter for a period of eighteen months, unless the parties seek an extension of that time period for purposes of extending the time for the donations that Diamond may be required to provide as part of the Settlement Agreement, for the limited purpose of administering, enforcing, and interpreting the Settlement Agreement and this Order.

The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: October 16, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE